IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BRIAN E. HEALY, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 11-CV-00659-DGK |
| ) | |
| MINNESOTA LIFE INSURANCE ) | |
| COMPANY f/k/a MINNESOTA MUTUAL ) | |
| LIFE INSURANCE COMPANY, ) | |
| ) | |
| and ) | |
| ) | |
| THOMAS M JOHNSTON, Individually and ) | |
| As Agent of Minnesota Life Insurance ) | |
| Company, ) | |
| ) | |
| and ) | |
| ) | |
| STANCORP FINANCIAL GROUP, INC., ) | |
| ) | |
| and ) | |
| ) | |
| STANDARD INSURANCE COMPANY ) | |
| ) | |
| Defendants. ) | |

## ORDER GRANTING PLAINTIFF'S MOTION TO REMAND

This case arises from Plaintiff's alleged disability and subsequent denial of insurance benefits. Pending before the Court is Plaintiff's Motion to Remand (Doc. #15) and Defendants Minnesota Life Insurance Company (f/k/a Minnesota Mutual Life Insurance) ("Minnesota Mutual), StanCorp Financial Group, Inc. ("StanCorp"), and Standard Insurance Company's ("Standard") Motion to Dismiss (Doc. 9). Plaintiff argues that Defendants' removal of this action pursuant to the Court's federal question jurisdiction is inappropriate because Plaintiff does not assert any right arising under the Constitution, treaties, or laws of the United States. Defendants argue that the policy under which Plaintiff seeks to recover is governed by § 3(1) of

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1002(1), and accordingly this Court has jurisdiction pursuant to § 502(e), 29 U.S.C. § 1132(e). The Court has reviewed Plaintiff's Motion to Remand (Docs. 15, 16), Defendants' Opposition to Plaintiff's Motion to Remand (Doc. 18), Plaintiff's Reply (Doc. 24) and Sur-reply (Doc. 27), and Defendants' Sur-reply (Doc. 25). The Court has also reviewed Defendants' Motion to Dismiss (Doc. 9) and Plaintiff's Opposition to this Motion (Doc. 17). For the following reasons, Plaintiff's Motion to Remand is GRANTED and Defendants' Motion to Dismiss is DENIED WITHOUT PREJUDICE.

## Background

The undisputed facts show that at all relevant times, Plaintiff Brian E. Healy, M.D. was an employee of Carondelet Orthopaedic Surgeons, P.C. or its successors ("COS"); Defendants Minnesota Mutual, StanCorp, and Standard were engaged in the business of providing financial services and insurance; and Defendant Thomas M. Johnson ("Johnson") was an insurance sales agent for Minnesota Mutual. The StanCorp Defendants are the successors in interest to Minnesota Mutual and operate as the claims administrators for disability insurance policies written by Defendant Minnesota Mutual, including the policies at issue in this action.

Between October 19, 1988 and January 19, 1992, Minnesota Mutual, through Johnson, sold Plaintiff two Minnesota Mutual Disability Income policies ("the Policy") which provided for benefits in the event of disability (Policy No. 1-787-275H and Policy No. 1-920-106H). Subsequently, the StanCorp Defendants acquired Minnesota Mutual and the claims administration duties for these policies. Plaintiff now asserts that he is no longer able perform the "material and substantial duties of his regular occupation" due to multiple disabling injuries

2

that have caused severe arthritis in his upper and lower extremities, and that, therefore, he qualifies for full benefits as set forth in his disability policies (Doc. 1-1 at 5).

While the StanCorp Defendants acknowledged that Plaintiff cannot perform the material and substantial duties of his regular occupation, they maintain that Plaintiff's monthly disability benefits must be reduced if he performs any operative procedure as part of his regular occupation. Plaintiff argues that he is entitled to continue performing his duties as an orthopedic surgeon and should receive full disability benefits if such duties do not account for more than 50% of his pre-disability income. Thus, there is a dispute between the parties concerning their respective rights and obligations under the Policy.

On May 18, 2011, Plaintiff filed an action in the Circuit Court of Jackson County, Missouri against Defendants Minnesota Mutual, Johnson, StanCorp, and Standard to recover benefits pursuant to the disability insurance policies issued by the Defendants. Specifically, Plaintiff brought state law claims for declaratory judgment, vexatious refusal to pay, equitable estoppel, breach of contract, intentional infliction of emotional distress, negligent infliction of emotional distress, fraud/misrepresentation, negligent misrepresentation, negligence, breach of fiduciary duty, and breach of covenant of good faith and fair dealing (Doc. 1-1).

On July 5, 2011, Defendants removed the case to this Court arguing that Plaintiff's insurance Policy was part of a COS-sponsored "employee welfare benefit plan" within the meaning of § 3(1) of ERISA, and accordingly, any cause of action to recover benefits must be brought pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Defendants further argue that ERISA § 514, 29 U.S.C. § 1144 preempts all state law causes of action for the recovery of benefits provided through "employee welfare benefit plans" and accordingly, Plaintiff's state law claims must be dismissed.

3

## Standard for Remand

An action may be removed by the defendant where the case falls within the original jurisdiction of the district courts. 28 U.S.C. § 1441(a). If the case is not within the original subject matter jurisdiction of the district court, the court must remand the case to the state court from which it was removed. 28 U.S.C. § 1447(c). The burden of establishing federal jurisdiction is on the party seeking removal. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d 181, 183 (8th Cir. 1993). Removal statutes are to be strictly construed, and all doubts are resolved in favor of remand. *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619, 625 (8th Cir. 1997).

## Discussion of Removal

ERISA applies when an employer-sponsored plan provides disability benefits to its employees through the purchase of insurance. ERISA § 3(1), 29 U.S.C. § 1002(3). An employee covered by an ERISA plan can file suit to recover benefits provided through that plan only under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208-09 (2004). ERISA preempts state law claims to recover plan benefits. Suits under ERISA § 502 present a federal question for purposes of federal court jurisdiction and causes of action that relate to civil enforcement of §502 are removable to federal court even if presented in terms of state law. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58 (1987); *Hull v. Fallon*, 188 F.3d 939, 942 (8th Cir. 1999). Thus, if the Policy at issue is covered under ERISA, this Court has jurisdiction.

### A. The Policy is not an "employee benefit plan" covered under ERISA.

For coverage under ERISA, a plan must be an "employee benefit plan," defined as either an "employee pension benefit plan" or an "employee welfare benefit plan." 29 U.S.C. § 1002.

Defendants contend that the Policy issued to Plaintiff is an "employee welfare benefit plan" pursuant to ERISA such that this Court has federal question jurisdiction pursuant to 29 U.S.C. § 1331. Plaintiff disagrees, arguing that the ERISA Safe Harbor provision prevents ERISA from applying to the Policy. In the alternative, Plaintiff argues that ERISA does not apply because the Policy does not meet the statutory definition of "employee welfare benefit plan."

The proponent seeking to invoke ERISA coverage must first establish that the policy at issue constitutes an ERISA-covered plan. *Fuller v. Ulland*, 76 F.3d 957, 960 (8th Cir. 1996). Defendants argue that the Policy is an "employee welfare benefit plan." "Employee welfare benefit plans"—defined as any plan, fund, or program, established or maintained by an employer or by an employee organization for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise—are included in the definition of ERISA-covered plans. 29 U.S.C. § 1002(1).

Plaintiff argues that the Policy does not meet this definition. Specifically, Plaintiff argues that the Policy is exempt from ERISA coverage under the statute's Safe Harbor provision, or in the alternative, that it does not fall within the scope of ERISA coverage because the Policy is not a "plan, fund, or program," Defendants did not establish or maintain the Policy, and Plaintiff was not an employee of COS. The Court finds that the Policy does not fall within the Safe Harbor provision of 29 C.F.R. § 2510.3-1(j) but that it still does not qualify for ERISA coverage because it was not "established or maintained" by Plaintiff's employer.

1. **The Policy does not fall within the Safe Harbor provision of 29 C.F.R. § 2510.3-1(j).**

Plaintiff's primary argument is that the policy at issue is covered by the Safe Harbor provision of 29 C.F.R. § 2510.3-1(j) such that ERISA does not apply. Not all employee

insurance policies are subject to ERISA. Under the Safe Harbor provision, ERISA does not apply to insurance programs in which:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j).

In order to be exempt from ERISA, a plan must satisfy all four of the Safe Harbor criteria. These requirements are strict, and failure to meet one renders the Safe Harbor exception inapplicable. *See Dam v. Life Ins. Co of N. Am.*, 206 Fed. Appx. 626, 627 (8th Cir. 2006). Plaintiff argues that the Safe Harbor provision clearly applies to the Policy because COS made no contributions to the Policy, all premiums were paid by Plaintiff, participation in the Policy was completely voluntary, and COS received no consideration in connection with the Policy. Defendants argue that the Policy does not fall within the Safe Harbor exemption because COS advanced Plaintiff's premiums on the Policy and Plaintiff received a discount on the Policy due to COS's involvement.

The parties present no significant disagreement on the second and fourth elements of the Safe Harbor provision. Plaintiff purchased the policy voluntarily, and COS does not argue that it received consideration for Plaintiff's participation in the Policy. At issue are only the first and

third elements. The Court finds that the Policy does not meet the first element, and is, therefore, excluded from the Safe Harbor provision.

### a. Plaintiff's 10% premium discount was a "contribution" to the policy for purposes of determining whether the Policy falls within ERISA's Safe Harbor.

The first inquiry under the Safe Harbor provision is determining whether COS made any contributions to the Policy. "If the removing party demonstrates that the insured's employer paid or subsidized the insurance premiums, generally, the safe harbor status is defeated under the first factor." *Letner v. Unum Life Ins. Co. of Am.,* 203 F. Supp. 2d 1291, 1300-01 (N.D. Fla. 2001). The parties submit contradictory evidence on this issue. Defendants produce evidence, including an affidavit of Michael Dollowitch (Interim Supervisor, Premium & Billing at StanCorp), showing that COS represented to Plaintiff that it would pay the premium owed to Minnesota Mutual on Plaintiff's account, that Minnesota Mutual agreed to give a ten percent discount on the individual employees' policies in consideration for COS's agreement to pay the premiums, and that COS tendered checks to Minnesota Mutual as payment for the Policy insuring Plaintiff (Doc. 18-1).

Plaintiff, on the other hand, produces evidence, including affidavits from Kimberly West (Accountant for COS) and William Hussey (Office Manager for COS), showing that COS does not currently pay, nor has ever paid or otherwise expensed the premium payments for Plaintiff's Policy (Doc. 24-1, 24-2). COS, Plaintiff argues, merely serves as a conduit for premium payments from each individual physician to the insurer: StanCorp submits a monthly bill to COS, COS collects the entire premium owed from each physician to StanCorp, and COS then remits one check for the total amount due to StanCorp on all physicians' accounts.

Defendants maintain that even if Plaintiff's assertions are true, COS still contributed to Plaintiff's Policy. For example, Defendants argue that even if Plaintiff does reimburse COS for

amounts owed to StanCorp, it has no binding written obligation to do so. In addition, Defendants argue that because COS pays the premium to StanCorp monthly and Plaintiff reimburses COS quarterly, Plaintiff receives the benefit of an advance of three month's paid premium without paying any interest on that amount. *See Stone v. Disability Mgmt. Serv., Inc.*, 288 F. Supp. 2d 684, 692 (M.D. Pa. 2003). Accordingly, Defendants argue that COS "contributes" to Plaintiff's Policy. At the very least, Defendants request that the Court postpone remand until discovery can be conducted to produce evidence that Plaintiff is required to reimburse COS for amounts remitted to StanCorp or that Plaintiff pays interest to COS for the advanced premium payments.

The Court does not find Defendants' argument compelling. As Plaintiff notes, there is no agreement between Plaintiff and COS requiring Plaintiff to reimburse COS because COS was not involved in the negotiation of Plaintiff's Policy with its insurer. This fact does not weaken Plaintiff's case; rather, it strengthens it. COS is *not* involved in contributing to or administering Plaintiff's Policy; COS merely serves as the conduit for payments. Allowing discovery on this issue would merely prolong litigation unnecessarily. Because Defendants have produced no evidence that Plaintiff has ever failed to reimburse COS for payments on the Policy, and because Defendants have produced no evidence regarding the interest benefits Plaintiff has received as a result of COS's payments on the Policy, the Court finds Defendants have not established that COS "contributed" to the Policy.

Defendant also argues that the Policy fails to satisfy the Safe Harbor criteria because StanCorp provided a reduction in Plaintiff's Policy in consideration of COS's agreement to pay the premium. Courts are divided on the issue of whether the Safe Harbor provision applies if a discount is given as a result of the employer's involvement. Some courts find that where

8

employees benefit from a reduced rate structure based on an employer's negotiation of the plan, agreement to pay the premiums, or even grouping of multiple employees on one bill, the employer has contributed to the policy. *See Moore v. Life Ins. Co. of N. Am.*, 708 F. Supp. 2d 597, 607 (N.D.W. Va. 2010) ("While the plaintiff paid his own premiums for the AD & D coverage, he benefitted from the unitary rate structure [American Airlines] was able to negotiate by bargaining for the coverage."); *Spillane v. AXA Fin., Inc.*, 648 F. Supp. 2d 690, 698 (E.D. Pa. 2009); *Pittinos v. Provident Life and Acc. Ins. Co.*, No. CA 08-0662-KDC, 2009WL 424317, at *6 (S.D. Ala. Feb. 17, 2009) (noting that plaintiff's employer contributed to the plan by paying premiums and negotiating a 10% discount on the plan); *Stone*, 288 F. Supp. 2d at 692.

However, other courts have found that discounts in rates are not "contributions" for the purposes of ERISA jurisdiction. *See Letner*, 203 F. Supp. 2d at 1300-01 ("It is highly improbable that *de minimus* and indirect contributions would resolve the issue of ERISA jurisdiction) (internal citations omitted); *Rubin v. Guardian Life Ins. Co. of Am.,* 174 F. Supp. 2d 1111, 1117-19 (D. Or. 2001); s*ee also Riggs v. Smith,* 953 F. Supp. 389, 394 (S.D. Fla. 1997) ("The record provides no grounds for concluding that NW Permanente has done anything more than arrange for desirable coverage at attractive rates") (internal citations omitted).

Here, the Court finds that the 10% discount attributed to Plaintiff by virtue of COS's agreement to transmit Plaintiff's premium payments on the Policy is a "contribution" for purposes of removing this Policy from the Safe Harbor provision of 29 C.F.R. § 2510.3-1(j). In the present case, COS provided Plaintiff a benefit he could not have received as an individual; the 10% discount was available to Plaintiff only because he purchased insurance together with other employees and because it was billed through his employer. *Stone*, 288 F. Supp. 2d at 691; *Brown v. The Paul Revere Life Ins. Co.,* No. CIV.A.01–1931, 2002 WL 1019021, at *7 (E.D. Pa.

9
Case 4:11-cv-00659-DGK   Document 28   Filed 02/21/12   Page 9 of 15

May 20, 2002). Thus, COS provided a "contribution" to Plaintiff in the form of a benefit he would not have received had he not been an employee. Accordingly, the Safe Harbor's exclusionary provision does not apply.

### b. The sole function of COS was to remit payments from the Plaintiff to the insurer.

The Policy also satisfies the third criterion of the Safe Harbor provision. As discussed above, the only task COS performed in conjunction with the Policy was to serve as a conduit for premium payments from Plaintiff its insurer. In *Bullard v. Standard Insurance Company*, a case involving the same defendant, the court found that a reasonable inference could be made that the third criterion of the safe harbor provision was satisfied because the employer's role with respect to the policy was minimal and because Defendant StanCorp, not the employer, had control of the policy. No. 10-3083-CV-S-GAF, 2010 WL 2545453, at *2 (W.D. Mo. 2010).

### 2. The Policy is not an "employee welfare benefit plan" as defined by 29 U.S.C. § 1002(1).

Plans that meet the criteria listed in the ERISA Safe Harbor provision of 29 C.F.R. § 2510.3-1(j) are not considered "employee welfare benefit plans," and are, therefore, excluded from the scope of ERISA coverage. "The converse, however, is not necessarily true." *Johnson v. Watts Regulator Co.*, 63 F.3d 1129, 1133 (1st Cir. 1995). A program that fails to satisfy the Safe Harbor criteria is not automatically deemed to qualify for ERISA coverage. *Id*. Rather, the plan is "subject to further evaluation under the conventional tests." *Id*. Thus, even though the Policy does not fall within ERISA's Safe Harbor provision, the Court must still remand if it finds the Defendants did not establish that the Policy meets the definition of an "employee welfare benefit plan."

To qualify as an "employee welfare benefit plan," there must be: "(1) a plan, fund, or program (2) established or maintained (3) by an employer . . . (4) for the purpose of providing

medical, surgical, [or] hospital care . . . benefits . . . (5) to participants or their beneficiaries." *Peckham v. Gem State Mut. of Utah*, 964 F.2d 1043, 1047 (10th Cir. 1992) (internal citations omitted). The parties do not dispute that the Policy at issue here meets requirements four and five. Rather, they disagree on whether the Policy is a "plan, fund, or program," whether Plaintiff is an employee, and whether the Policy is "established or maintained by an employer." The Court finds that the Policy is a "plan, fund, or program" and that Plaintiff is an employee, but that the Policy is not "established or maintained by an employer," and is, therefore, not subject to ERISA coverage.

**a. The Policy is a "plan, fund, or program."**

Plaintiff argues that the Policy is not a "plan, fund, or program" as required under 29 U.S.C. § 1002(1) for ERISA coverage. In determining whether a plan, fund or program is covered by ERISA, the court must determine whether from the surrounding circumstances, a reasonable person could ascertain the intended benefits, beneficiaries, source of financing, and procedures for receiving benefits. *Nw. Airlines, Inc. v. Fed. Ins. Co.*, 32 F.3d 349, 354 (8th Cir. 1994) (citing *Donovan v. Dillingham*, 688 F.2d 1367, 1373 (11th Cir. 1982)). In interpreting this requirement, the Eighth Circuit has held that the inquiry is whether the plan requires "the establishment of a separate, ongoing administrative scheme to administer the plan's benefits." *Kulinski v. Medtronic Bio-Medicus, Inc*., 21 F.3d 254, 257 (8th Cir. 1994).

Plaintiff argues that Defendants had no administrative functions with respect to this Policy: Plaintiff purchased the Policy individually, paid the Policy premiums, and chose the types and amounts of disability benefits he would receive under the Policy. Because Defendants did not serve an administrative function, Plaintiff argues there was no ongoing administrative scheme, and the Policy cannot be covered under ERISA.

This argument, however, is misplaced.  As Defendants note, Plaintiff seems to suggest that because COS did not make claims determinations or pay benefits, there was no ongoing administrative scheme.  While it is true that Defendants have provided no evidence that COS engaged in plan administration, Plaintiff fails to cite any case law suggesting that the employer must be the entity responsible for the ongoing administration.  In fact, other cases that have considered this issue focus more on whether there is any ongoing plan administration, not on who is administering it.  *See Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1 (1987); Harris v. Arkansas Book Co., 794 F.2d 358 (8th Cir. 1986).  The Policy here meets all the requirements of the reasonable person test: it identifies the insured, Plaintiff Brian E. Healy, it states the premium, it lists the benefits and when they may become payable, it includes who will pay the benefits, and it includes a claims procedure.  Because it satisfies these requirements, the Court finds that it is a "plan, fund, or program" under the regulations.

### b. Plaintiff was an employee, not a partner of COS.

Plaintiff also argues that the Policy cannot be an "*employee* welfare benefit plan" because Plaintiff was a partner with COS, not employee of it.  29 C.F.R. § 2510.3-3(b). The Court finds this argument without merit.  COS is a professional corporation, not a partnership, therefore, it has shareholders, not partners.  Courts have repeatedly held that shareholders may still be beneficiaries of an ERISA plan if they meet the other requirements of ERISA coverage.  *See Prudential Ins. Co. of Am. v. Doe*, 76 F.3d 206, 209 (8th Cir. 1996); *Robinson v. Linomaz*, 58 F.3d 365, 370 (8th Cir. 1995).  In addition, multiple courts have held that a plan sponsored by a professional corporation in which multiple doctors are shareholders is subject to ERISA.  *See Matter of Baker*, 114 F.3d 636, 639 (7th Cir. 1997); *Provident Life & Acc. Ins. Co. v. Sharpless*, 364 F.3d 634 (5th Cir. 2004).

### c. COS did not "establish or maintain" the Plan.

Plaintiff's final argument is that the Policy is not an "employee welfare benefit plan," and therefore not subject to ERISA, because the plan was not "established or maintained" by the employer as required by 29 U.S.C. § 1002(1). Specifically, Plaintiff argues that COS did not negotiate the terms of the Policy, did not pay any portion of the Policy's premiums, did not participate in Plaintiff's application for the Policy, and had no involvement in the administration or submission of the claims. COS's only responsibility with regard to the Policy, Plaintiff maintains, was to forward Plaintiff's premium payments to the insurer. Defendant, however, maintains that COS did maintain and sponsor the plan through payment of the insurance premiums.

To determine whether COS "established or maintained" the Policy, "the court should [focus] on the employer . . . and [its] involvement with the administration of the plan." *Gahn v. Allstate Life Ins. Co.,* 926 F.2d 1449, 1451 (5th Cir.1991). To qualify, more is required than merely an employer's decision to provide employees with a benefit plan. *Donovan v. Dillingham,* 688 F.2d 1367, 1373 (11th Cir.1982). "It is the reality of a plan, not the mere decision to extend certain benefits, that is determinative of the establishment of a plan." *Moore v. Life Ins. Co. of N. Am.*, 708 F. Supp. 2d 597, 606 (N.D.W. Va. 2010) (citing *Donovan*, 688 F.2d at 1373). Defendants produce no evidence showing that COS helped negotiate the plan or participate in its administration. In addition, they produce no evidence that COS had a hand in drafting the Policy, determining eligibility for coverage, or investigating or processing claims. *See Bullard*, 2010 WL 2545453, at *2 (citing *Johnson*, 63 F.3d at 1136). Thus, the Court finds insufficient evidence to conclude that COS "established" the plan.

13
Case 4:11-cv-00659-DGK   Document 28   Filed 02/21/12   Page 13 of 15

The Court also fails to find that COS "maintained" or "supported" the plan. The only evidence presented concerning Defendants' maintenance of the Plan is with regard to the payment of Policy premiums. And, as the Court has previously discussed, the Defendant has not sufficiently established that its remittance of Plaintiff's payments to its insurer constituted "contributions" to the Policy.

Overall, "the 'established or maintained' requirement seeks to ascertain whether the plan is part of an employment relationship by looking at the degree of participation by the employer in the . . . maintenance of the plan." *Peckham*, 964 F.2d at 1049. Unlike other cases finding that employers "established or maintained" the plan, Defendants produce no evidence that COS paid parts of its employees' premiums, listed the insurance in its manual as an employment benefit, or advertised the Policy to other employees. *See Kenney v. Roland Parson Contracting Corp.*, 28 F.3d 1254, 1258 (D.C. Cir. 1994); *Peckham*, 964 F.2d at 1049.

In addition, there is no evidence that COS established or maintained the program with the *purpose* of providing benefits to its employees as is required by the statute. 29 U.S.C. § 1002(1); *see Hansen v. Continental Ins. Co.*, 940 F.2d 971, 978 (5th Cir. 1991) (requiring "some meaningful degree of participation by the employer in the creation or administration of the plan" and, if insurance is involved, requiring that the employer "have had a purpose to provide ... benefits to its employees"). Because here, the "employer does no more than purchase insurance for [its] employees, and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, [it] has not established an ERISA plan." *Hansen*, 940 F.2d at 978.

## Conclusion

The burden of establishing federal jurisdiction is on the party seeking removal. *In re Bus. Men's Assurance Co. of Am.*, 992 F.2d at 183. Defendants here have failed to meet the burden of showing that Plaintiff's Policy is covered by ERISA. In addition, although there is evidence supporting Defendants' claim, removal statutes are to be strictly construed, and all doubts are resolved in favor of remand. *Transit Cas. Co*, 119 F.3d at 625. Accordingly, for the reasons discussed herein, Plaintiff's Motion to Remand is GRANTED and Defendants' Motion to Dismiss is DENIED.


Date:   February 21, 2012                         /s/ Greg Kays
                                                  GREG KAYS, JUDGE
                                                  UNITED STATES DISTRICT COURT